ALBIN HEDLIN v. JOHN J. LEE, as Sheriff of Ward County, North Dakota, Jennie E. Gjertsen, George H. Gjertsen, Charles A. Lind, Henry A. Barnes, and Nathan M. Barnes.

(131 N. W. 390.)

**Mortgages — Power of Sale — Good Faith of Mortgagee in Foreclosing — Tender.**

1. In an action to quiet title to a quarter section of land in Ward county, defendants assert rights based on certain foreclosure proceedings by advertisement and a sheriff's deed issued pursuant thereto. The mortgage was given to secure the payment of the sum of only $25. Prior to the commencement of the foreclosure proceedings, plaintiff, in good faith, offered to pay the sum. due, which was refused, but he failed to technically comply with the statute in. making a tender, or in keeping such tender good by subsequently depositing the amount in a bank in conformity to the statute, and by giving the creditor notice thereof, although he, in fact, deposited in a bank the amount then due, lacking 35 cents. With knowledge of plaintiff's willingness and desire to pay whatever was owing, the holder of such mortgage caused foreclosure proceedings to be commenced by the publication of notice of sale in a newspaper published about 70 miles from the land, when there were newspapers in the immediate vicinity thereof, for the evident purpose of keeping plaintiff in ignorance of such foreclosure proceedings. On the day appointed for sale, the premises were struck off to the holder of the mortgage for the paltry sum due, with costs, she evidently being the sole bidder at the sale. Plaintiff acquired no actual knowledge thereof until after such sheriff's deed was issued. In the light of the above and other facts stated in the opinion;

*Held*, that the power of sale contained in such mortgage was not exercised in good faith, and the foreclosure sale and the sheriff's deed are null and void.

Note.—That a power of sale in a mortgage must be exercised by the mortgagee fairly and in good faith is universally recognized, and, while mere inadequacy of price at a sale under a power contained in a mortgage does not necessarily render the sale invalid, nevertheless, gross inadequacy of price is generally regarded as evidence of fraud sufficient to require the setting aside of the sale. And the rule also generally prevails that a mortgagee with power to sell is a trustee, and therefore as such is not alleged to purchase directly or indirectly at his own sale, so as to render the sale binding or cut off the equity of redemption, unless the mortgage confers such right or the mortgagor consents to such purchase. Such sale and purchase are not, however, void, but voidable merely, at the election of the mortgagor, and they are valid for all purposes if made fairly and without fraud, except that the mortgagor or those claiming under him may redeem within a reasonable time. The authorities on these questions are reviewed in elaborate notes in 92 Am. St. Rep. 573, and 103 Am. St. Rep. 51.

Mortgages — Foreclosure under Power of Sale — Good Faith.

2. The person having the right to exercise a power of sale in a mortgage is bound to the exercise of the utmost good faith and fair dealing towards the mortgagor or owner of the premises, and a mere technical or literal compliance with the statute by him is not alone sufficient.

Mortgage — Good Faith in Foreclosing under Power of Sale.

3. The fact of the apparent gross inadequacy of price, coupled with the other facts, not only fully justifies, but requires, a court of equity to find that the power of sale was exercised in bad faith, and to adjudge to be invalid all proceedings under such attempted foreclosure.

Opinion filed March 25, 1911.   Rehearing denied May 18, 1911.

Appeal from District Court, Ward county; *Charles F. Templeton,* Judge.

Action by Albin Hedlin against John J. Lee, sheriff of Ward county, and others.   Judgment for defendants, and plaintiff appeals.

Reversed with directions.

*Murphy & Wooledge,* for appellant.

*John E. Greene, W. H. Campbell,* and *Palda, Aaker, Greene,* and *Kelso,* for respondents.

Fisk, J.   The facts necessary to a correct understanding of the questions involved on this appeal are as follows:

In January, 1903, one Peter Rosenlund made final proof for the land in dispute, and thereafter patent was issued to him by the United States government.   On January 17, 1903, Rosenlund executed to defendant, Nathan M. Barnes, two mortgages covering such land, one to secure the payment of the sum of $500 due in five years with interest at 8 per cent, and one to secure the payment of $25 payable in equal annual instalments of $5 each, representing the additional interest of 1 per cent on such loan.   The validity of these mortgages is not questioned, and they were duly satisfied of record prior to the commencement of this action.

Defendant George H. Gjertsen, acted as attorney or agent for Rosenlund in making such final proof and in procuring such loan.   On January 26, 1903, plaintiff, Hedlin, purchased the land in controversy from Rosenlund for the stipulated consideration of $1,600 payable as follows:   $150 cash, $475 November 1, 1903, $475 November 1, 1904,

and the assumption by plaintiff of the Barnes mortgage aforesaid. Such purchase price was paid, and the land deeded to Hedlin by Rosenlund in October, 1904. Prior to entering into the written contract for such purchase, Hedlin acquired knowledge of the $25 mortgage, and the vendor, Rosenlund, thereupon agreed to pay the same, and finally it was agreed that Hedlin should also assume such mortgage and deduct the amount thereof from the cash payment to be made by him.

These parties thereafter employed defendant Gjertsen to draw the contract of sale, and either immediately prior or subsequent to the execution of such contract, Gjertsen demanded of Hedlin the settlement of a further claim of $25, which he asserted was due Barnes Brothers for additional interest on the mortgage given by Rosenlund, and he offered to take a third mortgage for such amount, or in lieu thereof $20 in cash, stating that if not settled the mortgagees would foreclose. Hedlin did not at that time agree to pay this claim, but, on or about April 1, 1903, Gjertsen induced him to execute a mortgage for $25 to Barnes, which mortgage he forwarded to Barnes Brothers, who subsequently assigned the same to Mrs. Gjertsen, and such assignment was recorded in January, 1904. Subsequently Gjertsen, acting for his wife, the assignee thereof, foreclosed such mortgage by advertisement, causing the notice of sale to be published at Minot, and plaintiff did not learn of the foreclosure proceedings until after a sheriff's deed had issued. Immediately upon learning such facts, plaintiff instituted this action to cancel such mortgage and the sheriff's deed, and to quiet title, and such sheriff's deed is the basis of the adverse claims of the defendants herein. The power of attorney authorizing the foreclosure was executed on December 2, 1904, and the first publication of notice of sale was made on December 8, 1904. The sheriff's deed was issued to Mrs. Gjertsen soon after the expiration of the year of redemption, and very soon thereafter she deeded the land to her father, defendant Charles A. Lind, who soon thereafter executed and delivered to defendant Henry A. Barnes mortgages under which Barnes Brothers now claim a lien on the land.

It is appellant's contention (1) that there was no consideration for the $25 note and mortgage; (2) that there was a valid and legal tender made by plaintiff to Gjertsen prior to the commencement of the foreclosure proceedings, of the amount apparently due thereon, which tender operated in law to devest the lien of such mortgage; (3) that the notice

of sale, as published, is vitally defective in not stating that the assignment of the mortgage to Mrs. Gjertsen had been recorded; (4) that in taking the mortgages from defendant Lind, defendant Henry A. Barnes had full knowledge of the facts, and is not an innocent encumbrancer; and (5) that the foreclosure sale was for a sum in excess of the amount due, and that the notice of sale is void, because the amount therein claimed to be due was in excess of the amount apparently due.

The conclusion reached by us renders it unnecessary to notice all of appellant's contentions. We are agreed that the judgment must be reversed, and will, as briefly as possible, state our reasons for such conclusion.

Whether there was any consideration for the $25 note and mortgage which was foreclosed, or whether plaintiff's alleged tender was technically sufficient, is not very material, as a determination of these questions adversely to appellant's contention would in no manner be controlling as to the principal question in litigation. We shall decide the case on the assumption, which we think is correct, that the trial court correctly decided both of these questions.

The testimony fairly discloses that sometime in the fall of 1904, and prior to the commencement of the foreclosure proceedings, plaintiff called upon Gjertsen for the express purpose of paying the instalments due on such mortgage indebtedness, and requested of him information as to the amount due; that Gjertsen, representing his wife, refused to furnish such information, and declined to accept any sum unless certain alleged costs of foreclosure were also paid. At that time the first instalment of $5 due December 1, 1903, with interest at 7 per cent, was unpaid, and on December 1, 1904, the second instalment became due, so that the utmost amount due on the latter date was $10.35. Plaintiff made known to Gjertsen his desire and ability to pay whatever was then due. It is true he did not actually produce the currency and tender it, for the reason, as stated by him, that he did not know the exact sum then due, but we think Gjertsen's attitude at that time was such as to clearly operate as a waiver of a formal tender, and defendants ought not to be heard to urge the contrary. There could not legally have been at that date any accrued costs of foreclosure, as the power of attorney from Mrs. Gjertsen to her husband, authorizing such foreclosure, was not executed until later. Counsel for respondent in their printed brief state that the foreclosure was commenced on December 8th. They urge

and rely upon the fact that plaintiff did not technically comply with the Code provisions regarding a tender. Conceding this, the fact remains that plaintiff, in good faith, called on Gjertsen, and made known to him his willingness and desire to make his defaults good by paying whatever sum was due and owing at that time, and Gjertsen was fully apprised of the fact that it was wholly unnecessary to resort to the security for the collection of this paltry sum. The fact that plaintiff failed to keep the tender good by a technical deposit in a bank, in strict conformity to the statute, does not in the least militate against the important fact of Gjertsen's knowledge of plaintiff's good-faith attempt to satisfy such indebtedness. This is important as having a direct bearing on what we deem a controlling fact in the case, although not raised or discussed by counsel and apparently for this reason overlooked by the learned trial court, *viz:* The good faith of the Gjertsens in exercising the power of sale.

It is well settled that a power of sale in a trust deed or mortgage can be exercised by the donee of such power only in the utmost good faith, and that, in the absence of such good faith, the foreclosure is a nullity. 28 Am. & Eng. Enc. Law, 2d ed. 765, and cases cited; see also Briggs v. Briggs, 135 Mass. 306; Clark v. Simmons, 150 Mass. 357, 23 N. E. 108.

In Briggs v. Briggs the supreme judicial court of Massachusetts said: "In executing the powers of sale, the defendant acted as trustee and agent for the plaintiff, and it was his duty, if he would himself be the purchaser, not only to conform to the terms of the powers, but to use the utmost good faith and diligence to protect the interests of his principal." And in Clark v. Simmons, that eminent tribunal again said: "It has repeatedly been held in this commonwealth and elsewhere, that a mortgagee who attempts to execute a power of sale contained in the mortgage is bound to exercise good faith, and to use reasonable diligence to protect the rights and interests of the mortgagor under the contract. Montague v. Dawes, 14 Allen, 369; Drinan v. Nichols, 115 Mass. 353; Thompson v. Heywood, 129 Mass. 401; Briggs v. Briggs, 135 Mass. 306. If he fails to do his duty in this respect, a mere literal compliance with the terms of the power will not render the sale valid against the mortgagor, in favor of one charged with knowledge of the delinquency, although it may be sufficient if the purchaser is a stranger who buys in good faith. In determining whether, in a particular case, a mortgagee

has acted in good faith and with a due regard for the interests of the mortgagor, the nature of his authority must be considered. . . . It is his duty, for the benefit of the mortgagor whom he represents, so to act in the execution of the power as to obtain for the property as large a price as possible. Ordinarily, the parties stipulate in the mortgage what kind of notices of sale shall be given, and, ordinarily, a mortgagee is not required to give a notice of a different kind; so far as the mortgage leaves him a power of selection of methods of giving notice and of making the sale, he is to act reasonably, and exercise a sound discretion. . . . Good faith and a reasonable regard for the interests of the mortgagor will not permit him to make a sale when no one will offer a price which an owner could reasonably think of accepting, if he were obliged to sell the property at a day's notice for what it would bring. In such a case, where the notices given have failed to accomplish the purpose which the contracts contemplated that they would accomplish, it is the duty of the mortgagee, if he would make a sale, properly to represent, not only his own rights to have the estate sold for his benefit, but also the right of the mortgagor to have an auction sale such as both parties must be presumed to have contemplated by their contract, and to get for the property as much as it can reasonably be made to bring. Under such circumstances he should do what a reasonable man would be expected to do to accomplish that result. A failure to do that would be evidence of a want of good faith, and such a neglect, without an active purpose to defraud, would invalidate the sale, unless it was made to a stranger who bought in good faith."

What are the facts in the case at bar bearing upon the good faith of the Gjertsens in exercising the power of sale? They knew of plaintiff's willingness and desire to pay the indebtedness, and it is fair to assume from the record that they purposely refused to receive such payment, believing that they might, through foreclosure proceedings, obtain a quarter section of land for this paltry debt. Their entire conduct lends countenance to this theory. They caused notice of the foreclosure sale to be published about 70 miles distant from the land, while there were two papers published in the immediate vicinity thereof. The land was bid in at the sale to Mrs. Gjertsen for the sum of $26.96 and the costs of foreclosure, including an attorney's fee of $25. That she was the sole bidder at the sale is apparent, and that the price bid was grossly inadequate there can be no doubt. The sheriff's deed was issued

to her on January 25, 1906, and almost immediately thereafter she and her husband transferred the land to Lind, her father, for the stipulated consideration of $1,500, and the latter executed to Barnes the two mortgages under which Barnes Brothers assert a lien upon the property.

While neither the publication of the notice of foreclosure sale at Minot, nor the inadequacy of price at which the property was sold, are, standing alone, sufficient to avoid the sale, we think all the facts, when considered together, clearly establish a want of good faith on the part of the Gjertsens in exercising such power of sale, and a total disregard of the rights of the mortgagor. Speaking upon the question of the effect of inadequacy of price, our sister state of South Dakota has said: "A court of equity, in the exercise of its equitable powers, will scrutinize with care sales made under powers of sale contained in the mortgage; and where there is a great inadequacy of consideration it will be astute in extracting from the facts of the case sufficient to justify annulling the sale. . . . The fact that property of the value of $600 was sold for $10.60 clearly shows either mistake or fraud; and we apprehend no court of equity would refuse to relieve the party from such sale." Stacy v. Smith, 9 S. D. 137, 68 N. W. 198.

In King v. Platt, 37 N. Y. 155, it was said: "A court of equity justly scrutinizes the conduct of a party placed by the law in a position where he possesses the power to sacrifice the interests of another in a manner which may defy detection, and stands ready to afford relief on very slight evidences of unfair dealing, whether it is made necessary by moral turpitude or only by a mistaken estimate of others' rights." See also 28 Am. & Eng. Enc. Law, pp. 798, 799, citing Flint v. Lewis, 61 Ill. 299; Webber v. Curtiss, 104 Ill. 309; Thompson v. Heywood, 129 Mass. 401; Stewart v. Hamilton Bldg. & L. Asso. — Tenn. —, 47 S. W. 1106. In the latter case the court, after referring to the fact that the notice of sale was published in an obscure paper in order to escape observation, and also the fact that the property brought not to exceed one third of its value, said: "It was practically a case of collusion between the trustee and the beneficiary to obtain the property for less than its value. Such conduct cannot be tolerated in a court of equity. The obligation of good faith rests upon the trustee and the beneficiary in enforcing the trust deed. Any substantial departure from good faith would necessitate the setting aside of the sale by a court of equity." Flint v. Lewis, 61 Ill. 299 in many respects is quite analogous

to the case at bar, and the sale under a power in a trust deed was held a nullity. See also Webber v. Curtiss, 104 Ill. 309.

For the above reasons, we hold that the foreclosure sale and the sheriff's deed issued thereunder, as well as the deed from the Gjertsens to Lind, should be set aside as null and void; it being apparent from the evidence that the latter is not an innocent purchaser in good faith and for value. The fact that plaintiff's counsel have not raised this question is no reason why a court of equity may not award to plaintiff the relief to which he is entitled under the evidence.

It only remains to determine the rights of Barnes Brothers, who claim to be innocent mortgagees. They do not stand in the attitude of innocent purchasers at the foreclosure sale, but merely claim liens under mortgages executed and delivered by Lind, the vendee, in the deed from the Gjertsens to him. In the light of the undisputed fact that plaintiff has been in actual possession of the premises at all times since the date of his purchase from Rosenlund, it appears to us to be elementary that such mortgagees must be deemed to have become such with full knowledge of plaintiff's rights in the land, plaintiff's actual possession being notice to the world that he claimed an interest in such real property, and by due inquiry Barnes Brothers would have learned of the extent of such interest. It is perfectly apparent that Barnes Brothers could not have become innocent purchasers of such premises from Lind, and it logically follows, therefore, that they could not become innocent mortgagees.

The record discloses that the indebtedness secured by the original $500 mortgage executed and delivered by Rosenlund to Nathan Barnes, and the payment of which was assumed by plaintiff, has not been paid by him, but that such mortgage was satisfied of record, and the amount thereof included in the mortgage from Lind to Barnes. In view of this, plaintiff is not entitled to the relief prayed for without first doing equity by paying to Barnes Brothers the amount of such indebtedness still unpaid (said $500 and interest).

Our conclusion is that the judgment appealed from be reversed, and the District Court take an account of the amount, if any, still unpaid on the indebtedness secured by such $500 mortgage, and also the amount due on the $25 note secured by the mortgage which was attempted to be foreclosed; and upon the payment to the persons entitled thereto of

the respective sums thus found to be due, plaintiff's title be quieted as prayed for, appellant to recover his costs on this appeal.

MORGAN Ch. J., not participating; Justice GOSS, being disqualified, Hon. W. H. WINCHESTER, Judge of the Sixth Judicial District, sat in his place by request.